762 S.E.2d 726

**The STATE, Respondent,**

v.

**Victor A. WHITE, Appellant.**

Appellate Case No. 2011–201286.

No. 5259.

Court of Appeals of South Carolina.

Heard May 6, 2014.

Decided Aug. 6, 2014.

Rehearing Denied Sept. 18, 2014.

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, and Senior Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, for Respondent.

GEATHERS, J.

Victor White was convicted of murder and armed robbery stemming from a shooting during an arranged marijuana purchase. The incident took place inside of the victim's vehicle at an empty Kentucky Fried Chicken (KFC) parking lot. White appeals his convictions, arguing the trial court erred in admitting his recorded statement because the statement was the direct product of the impermissible tactic of "question first, give *Miranda*[1] rights later," which has been expressly forbidden by the Supreme Court in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), and our supreme court in *State v. Navy*, 386 S.C. 294, 688 S.E.2d 838 (2010). We affirm.

## 1. Voluntariness and Admissibility of White's Statement

In both *Seibert* and *Navy*, the courts emphasized that *Miranda's* warnings requirement cannot be skirted by interrogative tactics that undermine the very purpose of *Miranda*, *i.e.*, unless and until such warnings and waiver are given, no evidence obtained as a result of interrogation can be used against a defendant at trial. *See Miranda*, 384 U.S. at 478–79, 86 S.Ct. 1602; *Seibert*, 542 U.S. at 617, 124 S.Ct. 2601; *Navy*, 386 S.C. at 303–04, 688 S.E.2d at 842.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Here, there is conflicting evidence as to whether White's statement was taken in violation of our supreme court's holding in *Navy*. By White's testimony, alone, he presents evidence that *Navy's* forbidden "question-first, give *Miranda* warnings later" tactic was employed in his interrogation. On the other hand, the State points to the testimony of two investigators who stressed they did not elicit any information from White prior to his signing of the *Miranda* rights waiver form. The State argues the investigators' testimony is further corroborated by the waiver form, which indicates White voluntarily waived his rights prior to answering any questions.[2]

Because there is conflicting evidence, the trial court was charged with making a finding that White received *Miranda* warnings and intelligently waived his right to silence prior to making a statement. *See State v. Silver*, 307 S.C. 326, 330, 414 S.E.2d 813, 815 (Ct.App.1992) ("Where there is conflicting evidence regarding the statements, the court must make a finding as to their validity."). White concedes his statement was given "voluntarily." However, he contests the timing of the *Miranda* warnings, which necessarily implicates *State v. Navy* and the issue of whether he intelligently and voluntarily *waived* his right to remain silent prior to making a statement. *See State v. Miller*, 375 S.C. 370, 380, 652 S.E.2d 444, 449 (Ct.App.2007) (finding the "intelligent waiver mandate" is in addition to the voluntariness requirement of *Miranda* ).

In the pre-trial *Jackson v. Denno*[3] hearing, the trial court did not make an explicit finding as to whether White's statement was taken in violation of *State v. Navy*. Rather, the trial court simply found White's statement was "freely and voluntarily given and the jury will be able to hear the statement." Because White already conceded the voluntariness of his statement, but challenged the timing of the *Miranda* warnings with the taking of his statement as a *Navy* violation, the trial court was charged with making a factual finding as to this

---

2. The State also cites both White's and the investigators' testimony stating the initial questioning did not begin until "around midnight," which coincides with the timing listed on the signed *Miranda* rights waiver form (11:55 P.M.).

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (outlining the procedure for a pre-trial hearing to determine the voluntariness and admissibility of a defendant's contested statement).

issue, i.e., whether the interrogative procedure through which the statement was obtained comported with *Navy*. Therefore, the trial court erred by not making sufficient findings of fact as to the statement's admissibility.

## 2. Harmless Error

■ Even if, as White argues, his statement was admitted in violation of *Navy*, we believe any error in its admission was harmless beyond a reasonable doubt.

In *State v. Creech*, 314 S.C. 76, 441 S.E.2d 635 (Ct.App. 1993), this court reiterated the Supreme Court of the United States' holding in *Chapman v. California*[4] that error of even constitutional magnitude may be deemed harmless if, "considering the entire record on appeal, the reviewing court finds beyond a reasonable doubt that the error did not contribute to the verdict." *Id.* at 86, 441 S.E.2d at 640 (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Taylor v. State*, 312 S.C. 179, 181, 439 S.E.2d 820, 821 (1993). Similarly, in *State v. Easler*, our supreme court intimated that any error in the failure to suppress a statement allegedly taken in violation of *Miranda* is subject to a harmless error analysis. 327 S.C. 121, 129, 489 S.E.2d 617, 621–22 (1997); *see also State v. Newell*, 303 S.C. 471, 477, 401 S.E.2d 420, 424 (Ct.App.1991) (finding failure to suppress evidence for *Miranda* violation harmless where record contained overwhelming evidence of guilt); *State v. Lynch*, 375 S.C. 628, 636, 654 S.E.2d 292, 296 (Ct.App.2007) ("The failure to suppress evidence for possible Miranda violations is harmless if the record contains sufficient evidence to prove guilt beyond a reasonable doubt.").[5] Harmless error rules, even in dealing with constitutional errors, "serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Chapman*, 386 U.S. at 22, 87 S.Ct. 824.

---

4. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

5. *Cf. Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (holding the erroneous admission of an involuntary confession is subject to a harmless error analysis when the defendant's guilt is established beyond a reasonable doubt).

Here, considering the entire record on appeal, we conclude beyond a reasonable doubt that any alleged error in admitting White's statement was harmless. White's appellate counsel insists the admission of White's statement was "devastating" because it allowed police to place White at the crime scene. However, notwithstanding White's statement, cell phone evidence clearly placed Victim and White together at the time and place of the murder. With information "pinged" from Victim's and White's cell phones to nearby cell towers, investigators were able to triangulate Victim's and White's positions and movements leading up to the murder. The data confirmed Victim and White were near the KFC and within close proximity of each other at the time of the murder. Furthermore, the data also revealed that Victim's last answered phone communication was an incoming call from White placed immediately before the estimated time of the murder.

Furthermore, the testimony presented at trial also placed White at the crime scene and overwhelmingly established White's guilt. Reggie Miller, an accomplice, testified he and White agreed to participate in a robbery, under the guise of a marijuana purchase, on the night of the murder. Miller recalled White made a phone call to Victim and arranged a meeting in the KFC parking lot near Benedict College in Columbia, South Carolina. Miller testified that after he and White walked to KFC, Victim pulled into the parking lot in his vehicle.[6] Miller stressed White got in the back seat of Victim's vehicle and he sat in the front passenger seat. Miller testified that seconds after getting into the vehicle, White shot Victim in the back of the head from the back seat. After the murder, Miller claimed White was laughing about it, and White admitted to others that he killed Victim.

In line with Miller's testimony, Demond Sanford, the other accomplice, testified about the details of the murder. Sanford admitted he stood on the street corner and served as "a lookout" during the robbery. Sanford recalled White and Miller got in Victim's vehicle after it pulled into the KFC parking lot, and shortly thereafter "[he] heard a loud pop." Sanford further testified that immediately after Miller walked away from the scene, Miller, in a panicked state, told him that

---

6. The KFC was closed for the night.

White shot Victim.  Conversely, Sanford testified White appeared calm.  Once Miller, White, and Sanford regrouped in the dorm room after the shooting, White enlisted Sanford's help to go back to Victim's car to find a scale with which to weigh the stolen marijuana.  Sanford testified he took the scale from Victim's side, who was not moving when they returned to the vehicle.  When questioned on the stand, Sanford denied White admitted shooting Victim.  However, the State impeached Sanford's testimony with a prior statement given to police in which he told investigators White admitted shooting Victim.

Still, other testimony from the trial established White's overwhelming guilt.  Jeremiah Henderson—a friend who let White, Miller, and Sanford into his Benedict College dorm room after the murder—testified that White laughed about the incident and repeatedly boasted, "I shot that man [in the robbery]" and "I can't believe [Victim] let me sit behind him."  Henderson also testified he saw White with a gun that night.  Finally, Nathaniel Jones—roommate of Henderson and an "ear" witness who pretended to be asleep in the dorm room [7] —testified he overheard White brag and laugh about killing somebody.

## CONCLUSION

Even though the trial court's *Denno* finding was insufficient, we find the entire record on appeal establishes beyond a reasonable doubt that any error in the admission of White's statement did not contribute to the verdict obtained.  Accordingly, the decision of the trial court is

**AFFIRMED.**

SHORT, J., concurs.

FEW, C.J., dissenting.

I agree with the majority that the trial court failed to make sufficient factual findings.  From the trial court's conclusory statement, we cannot determine whether the court admitted

---

7. According to Jones, he was awoken when White, Miller, Sanford, and Henderson came into his room around 2:00 A.M., but he pretended to be asleep because he did not want to become involved.

the statement for the reason the court expressed—the statement was freely and voluntarily given, a point the defendant conceded—or the court actually ruled on the issue raised—whether the police violated the principles set forth in *Missouri v. Seibert,* 542 U.S. 600, 601–02, 124 S.Ct. 2601, 159 L.Ed.2d 643, and *State v. Navy,* 386 S.C. 294, 302, 688 S.E.2d 838, 841 (2010). In my opinion, however, if there was error in admitting the statement, the error was not harmless. I would remand for a hearing and require the trial court to make sufficient factual findings.