The STATE, Respondent,

v.

Matthew S. MEDLEY, Appellant.

Appellate Case No. 2014–001499

Opinion No. 5412

Court of Appeals of South Carolina.

Heard April 19, 2016

Filed June 15, 2016

20

Appellate Defender David Alexander, of Columbia, for Appellant.

22

Attorney General Alan McCrory Wilson and Assistant Attorney General Susannah R. Cole, both of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg, for Respondent.

**WILLIAMS, J.:**

Matthew S. Medley appeals his conviction for driving under the influence (DUI), second offense, arguing the circuit court erred in admitting incriminating statements he made while in custody regarding his alcohol consumption. We affirm.

**FACTS/PROCEDURAL HISTORY**

On the evening of April 20, 2013, officers with the Cherokee County Sheriff's Office were working a traffic checkpoint on Highway 150 North in Cherokee County, South Carolina. At approximately 12:45 A.M. on April 21, 2013, officers witnessed Medley run a stop sign and speed away from the checkpoint on his motorcycle. Two of the officers, Lieutenant Steven Bright and Lieutenant Brian Mullinax, subsequently gave chase in separate vehicles.

Both officers captured the ensuing high-speed chase on dashboard video cameras in their patrol cars. Medley reached a top speed of 109 miles per hour on his motorcycle during the chase. Lt. Mullinax's camera captured Medley running through stop signs and crossing over the yellow center line on several occasions. At one point during the chase, a can of beer flew back from Medley's motorcycle toward the police cars.

The chase ended at Medley's parents' home. After Medley stopped his motorcycle and ran to the front porch, Lt. Mullinax apprehended him and "put him on the ground." Lt. Mullinax asked Medley whether he had a license and how much he had been drinking. Medley responded that he did not have a license and "[t]oo much." Officers subsequently read Medley his *Miranda*[1] rights. Thereafter, officers ordered Medley off the ground and brought him to the front of the patrol car, where they placed him under arrest and read him his *Miranda* rights again. Officers then searched the saddlebags on Medley's motorcycle and discovered approximately eighteen full cans of beer.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Lt. Mullinax transported Medley to the Cherokee County Detention Center while Bright arranged for his motorcycle to be towed. Medley initiated conversation with Lt. Mullinax during the car ride, apologizing and asking to make a phone call. Medley also asked if he could drop off keys at his girlfriend's house on the way to the detention center. After telling Lt. Mullinax to "take a right" when they approached a stop sign, Medley volunteered that he does not drink much anymore. Lt. Mullinax asked Medley how much he had to drink that day, and Medley stated he "didn't keep count." Lt. Mullinax told him to estimate, and Medley responded, "I couldn't tell you." When asked if he had more than ten drinks, Medley answered, "No, sir." Lt. Mullinax then asked if he had more than five, and Medley replied, "About four." Lt. Mullinax, however, stated he believed Medley had consumed more than that.

When they reached the detention center, Lt. Mullinax printed Medley's advisement of implied consent form, the breath alcohol analysis report with Medley's biographical data, and the South Carolina Department of Motor Vehicles notice of suspension. Medley signed all of the documents. Following the required twenty-minute waiting period, all of which was videotaped, Medley refused to submit to a breathalyzer test.

On August 8, 2013, a Cherokee County grand jury indicted Medley for failure to stop for a blue light and second-offense DUI. The case was called for a jury trial on June 10, 2014. Prior to trial, Medley objected to the admission of statements he made to Lt. Mullinax regarding his alcohol consumption on the night of the arrest, and the circuit court held a *Jackson* [2] hearing. At the hearing, both parties informed the court that no dispute existed as to what was said and pointed out the portions of the videos that were relevant to the motion. After hearing arguments and reviewing the videotapes, the court denied Medley's motion and found his statements were admissible. Medley later raised a contemporaneous objection when the State sought to admit the statements at trial.

At the conclusion of the two-day trial, the jury found Medley guilty of second-offense DUI and failure to stop for a blue light. The circuit court sentenced Medley to five years'

---

2. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

imprisonment, suspended upon the service of twenty-seven months, and five years' probation for the DUI charge. On the failure to stop for a blue light charge, the court sentenced Medley to a consecutive term of three years' imprisonment, suspended upon the service of three months, and probation. The court also revoked Medley's probation on another charge and sentenced him to a consecutive term of one year in prison. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Jenkins*, 412 S.C. 643, 650, 773 S.E.2d 906, 909 (2015). The decision of whether to admit or exclude evidence is within the sound discretion of the circuit court. *State v. Jackson*, 384 S.C. 29, 34, 681 S.E.2d 17, 19 (Ct. App. 2009). This court will not disturb the circuit court's admissibility determinations absent a prejudicial abuse of discretion. *State v. Adkins*, 353 S.C. 312, 326, 577 S.E.2d 460, 468 (Ct. App. 2003). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *State v. Irick*, 344 S.C. 460, 464, 545 S.E.2d 282, 284 (2001).

## LAW/ANALYSIS

Medley argues the circuit court erred in admitting incriminating statements regarding his alcohol consumption. According to Medley, the court should have excluded his answer to the initial question Lt. Mullinax asked him prior to reading his *Miranda* warnings. Medley further contends the court should have excluded his answers to Lt. Mullinax's post-*Miranda* questions pursuant to the rules set forth in *Missouri v. Seibert*[3] and *State v. Navy*.[4] Although we agree the circuit court abused its discretion in admitting Medley's incriminating statements, we find any error in their admission was harmless beyond a reasonable doubt.

### I. Admissibility of Incriminating Statements

 The purpose of *Miranda* warnings is to apprise a defendant of the constitutional privilege not to incriminate oneself while in the custody of law enforcement. *State v.*

---

3. 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

4. 386 S.C. 294, 688 S.E.2d 838 (2010).

*Evans*, 354 S.C. 579, 583, 582 S.E.2d 407, 409 (2003). "A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his rights." *State v. Miller*, 375 S.C. 370, 379, 652 S.E.2d 444, 449 (Ct. App. 2007).

> In both *Seibert* and *Navy*, the courts emphasized that *Miranda*'s warnings requirement cannot be skirted by interrogative tactics that undermine the very purpose of *Miranda*, i.e., unless and until such warnings and waiver are given, no evidence obtained as a result of interrogation can be used against a defendant at trial.

*State v. White*, 410 S.C. 56, 57, 762 S.E.2d 726, 727 (Ct. App. 2014) (emphasis omitted).

 "*Miranda* warnings are required for official interrogations only when a suspect 'has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *State v. Kennedy*, 325 S.C. 295, 303, 479 S.E.2d 838, 842 (Ct. App. 1996) (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602), *aff'd as modified*, 333 S.C. 426, 510 S.E.2d 714 (1998).

> The special procedural safeguards outlined in *Miranda* are not required if a suspect is simply taken into custody, but only if a suspect in custody is subjected to interrogation. Interrogation is either express questioning or its functional equivalent. It includes words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.

*Id.*

 "Whether a suspect is in custody is determined by an examination of the totality of the circumstances, such as the location, purpose, and length of interrogation, and whether the suspect was free to leave the place of questioning." *Navy*, 386 S.C. at 301, 688 S.E.2d at 841. "The custodial determination is an objective analysis based on whether a reasonable person would have concluded that he was in police custody." *Evans*, 354 S.C. at 583, 582 S.E.2d at 410. On appeal, this court will uphold the circuit court's findings as to custody when they are supported by the record. *Navy*, 386 S.C. at 301, 688 S.E.2d at 841.

■ Examining the totality of the circumstances, we find the circuit court's custody determination is not supported by the record. Although Medley was in his parents' front yard, not the typical scene of an interrogation, Lt. Mullinax had him handcuffed and pinned to the ground while asking the question that elicited the objectionable response. In our view, a reasonable person would have undoubtedly concluded he was in custody because Medley was restrained and, thus, deprived of his freedom of action. *See Evans*, 354 S.C. at 583, 582 S.E.2d at 410 (providing "[t]he custodial determination is an objective analysis based on whether a reasonable person would have concluded that he was in police custody"); *Kennedy*, 325 S.C. at 303, 479 S.E.2d at 842 (stating *"Miranda* warnings are required for official interrogations only when a suspect 'has been taken into custody or otherwise deprived of his freedom of action in any significant way' " (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602)); *Navy*, 386 S.C. at 301, 688 S.E.2d at 841 (noting "whether the suspect was free to leave the place of questioning" is part of the totality of the circumstances analysis for purposes of determining custody).

Further, given that the most important factual question in any DUI case is how much alcohol the suspect consumed prior to getting behind the wheel, we find Lt. Mullinax should have known his question was reasonably likely to elicit an incriminating response from Medley. *See Kennedy*, 325 S.C. at 303, 479 S.E.2d at 842 (stating interrogation "includes words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response"). Therefore, we find his question clearly constituted interrogation. *See State v. Easler*, 327 S.C. 121, 127, 489 S.E.2d 617, 621 (1997) (concluding police subjected a suspect to interrogation when, after determining he had been involved in an accident, police "continued to question him as to why he had left the accident and when he had last had a beer" because they "knew these questions were likely to elicit incriminating responses").

■ Based on the foregoing, we find Medley was subject to custodial interrogation at the time he made the initial incriminating statement regarding his alcohol consumption. Because Medley was subject to custodial interrogation at this point of the encounter with police, *Miranda* warnings were required.

*See id.* ("*Miranda* warnings are required for official interrogations only when a suspect 'has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602)). Accordingly, we hold the circuit court erred in failing to suppress Medley's response to the initial question regarding how much he had to drink that day.[5] *See Miller*, 375 S.C. at 379, 652 S.E.2d at 449 ("A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his rights.").

■ Having found the circuit court erred in admitting Medley's initial response, we must next determine whether the subsequent statements he made in the patrol car on the way to the detention center were taken in violation of *Seibert* and *Navy*.

■ As our supreme court noted, "[i]n *Seibert*, the [U.S. Supreme] Court dealt with the police practice of questioning a suspect until incriminating information is elicited, then administering *Miranda* warnings. Following the warnings, the suspect is again questioned and the incriminating information re-elicited. The post-warning statement is then sought to be admitted." *Navy*, 386 S.C. at 302, 688 S.E.2d at 841. To determine whether a constitutional violation occurred in this setting, a court must analyze the following factors: (1) "the completeness and detail of the question and answers in the first round of interrogation," (2) "the timing and setting of the

---

5. We reject the State's contention that Lt. Mullinax's question falls within the public safety exception to *Miranda* because this argument is without merit. *See New York v. Quarles*, 467 U.S. 649, 655, 657, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (carving out a public safety exception to the *Miranda* rule and stating "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination"). Asking Medley how much he had to drink, although perhaps relevant to his own health and safety, was simply irrelevant to the public's safety. The only purpose for asking such a question was to obtain evidence for his DUI case. While Medley led police on a lengthy high-speed chase, he was handcuffed and pinned to the ground in his parents' front yard at the relevant time in question and, thus, posed no threat to public safety. Therefore, to the extent the circuit court relied upon the public safety exception in its ruling at the pre-trial hearing, we find this was error because the exception is inapplicable to this case.

first questioning and the second," (3) "the continuity of police personnel," and (4) "the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 302, 688 S.E.2d at 841–42.

Applying the factors to the instant case, we find no constitutional violation occurred in this setting. Regarding the first factor, the question and answers in the first round of interrogation were not detailed or complete. Indeed, Lt. Mullinax asked only one objectionable question prior to reading Medley his *Miranda* rights—i.e., how much Medley had to drink that day—and Medley offered a two-word response: "Too much." Although this was arguably a rather damning statement, Lt. Mullinax did not continue questioning Medley regarding his alcohol consumption at that point in time. Lt. Mullinax did not, for example, ask Medley how many drinks he consumed or how long he had been drinking that day.

Turning to the second factor, we find the timing and setting of the first and second questionings were vastly different in this case. The first round, as outlined above, was brief and took place in Medley's parents' front yard immediately after he was detained for leading officers on a lengthy high-speed chase. Lt. Mullinax, in the heat of the moment, asked the initial question regarding Medley's alcohol consumption in conjunction with a standard inquiry as to whether he had a driver's license. The second round, on the other hand, took place in Lt. Mullinax's patrol car while he was transporting Medley to the detention center. Although Medley was clearly in custody at this point, he received *Miranda* warnings twice before entering the patrol car. Further, Medley's statements in the patrol car were elicited nearly twenty-two minutes after the initial questioning. Our review of the video reveals Medley initiated the conversation with Lt. Mullinax in the patrol car by stating he does not drink much anymore.

We do, however, acknowledge the third *Seibert* factor goes against upholding the admission of Medley's statements because Lt. Mullinax administered both the first and second questionings and, thus, the continuity of personnel was present in this case. As to the fourth factor, though, we find Lt. Mullinax's questions did not treat the second round as continuous with the first. As noted above, nearly twenty-two minutes

transpired between Medley's statement during his initial detention and those made while he was in the patrol car. While Medley's alcohol consumption was a common subject in both conversations, Lt. Mullinax did not initiate the second conversation. Rather, Lt. Mullinax responded to Medley's statement that he was not drinking much anymore, and the ensuing post-*Miranda* conversation led to statements regarding Medley's alcohol consumption on the day in question.

Upon a thorough review of the record, we find Medley's incriminating statements were not a direct product of the impermissible tactic of "question first, give *Miranda* rights later" that was expressly forbidden by the U.S. Supreme Court in *Seibert* and our supreme court in *Navy*. Accordingly, the circuit court did not abuse its discretion in admitting Medley's post-*Miranda* statements at trial.

## II. Harmless Error

Even if the circuit court abused its discretion in admitting Medley's incriminating statements at trial, we find any error in their admission was harmless.

"The failure to suppress evidence for possible *Miranda* violations is harmless if the record contains sufficient evidence to prove guilt beyond a reasonable doubt." *State v. Lynch*, 375 S.C. 628, 636, 654 S.E.2d 292, 296 (Ct. App. 2007). "Harmless error rules, even in dealing with constitutional errors, 'serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.'" *White*, 410 S.C. at 59, 762 S.E.2d at 728 (quoting *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

Based upon our review of the record, we find the overwhelming evidence of Medley's guilt renders any error in the admission of his incriminating statements harmless beyond a reasonable doubt. The videos from the officers' dashboard cameras showed Medley recklessly operating his motorcycle. Indeed, Medley drove all over the road during the high-speed chase—crossing the yellow line and running through stop signs multiple times—and reached a top speed of 109 miles per hour. Both officers on the scene testified that Medley

appeared intoxicated based upon his slurred speech, glassy eyes, and overall demeanor. The officers further testified that he smelled of alcohol that evening. Medley also exhibited strange behavior, asking to use his cell phone while he was on the ground surrounded by officers and asking to drop his keys off at his girlfriend's house on the way to the detention center. The saddlebags on Medley's motorcycle contained approximately eighteen unopened beer cans, and another beer can flew off the back of his motorcycle during the pursuit. Finally, the videotape of the twenty-minute waiting period prior to Medley's refusal to submit to a breathalyzer test shows Medley sitting with his head slumped over the entire time.

Accordingly, notwithstanding the erroneous admission of Medley's statements regarding his alcohol consumption, we find the record contained ample evidence from which a jury could have concluded Medley was guilty, beyond a reasonable doubt, of second-offense DUI. Thus, to the extent the court erred in admitting such statements, we find the error, if any, was harmless beyond a reasonable doubt. *See Lynch*, 375 S.C. at 636, 654 S.E.2d at 296 ("The failure to suppress evidence for possible *Miranda* violations is harmless if the record contains sufficient evidence to prove guilt beyond a reasonable doubt."); *White*, 410 S.C. at 59, 762 S.E.2d at 728 (noting our harmless error rules " 'block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial' " (quoting *Chapman*, 386 U.S. at 22, 87 S.Ct. 824)).

**CONCLUSION**

Based on the foregoing analysis, Medley's conviction for second-offense DUI is

**AFFIRMED.**

LOCKEMY, C.J., and MCDONALD, J., concur.