# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Phillip Wayne Lowery, Appellant.

Appellate Case No. 2018-002242

―――――――――

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

―――――――――

Opinion No. 5903
Heard March 8, 2022 – Filed April 6, 2022

―――――――――

## REVERSED AND REMANDED

―――――――――

Appellate Defender Taylor Davis Gilliam, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson, Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., and Assistant Attorney General Ambree Michele
Muller, of Columbia, and Solicitor William Walter
Wilkins, III, of Greenville, all for Respondent.

―――――――――

**THOMAS, J.:** Phillip Wayne Lowery appeals his driving under the influence (DUI) conviction, arguing the trial court erred in (1) admitting statements he made on a dash camera recording and (2) not dismissing the charge due to the State's failure to comply with the DUI statute regarding a second dash camera recording. We reverse and remand.

**FACTS**

During a *Jackson v. Denno*[1] pre-trial hearing, Trooper David Vallin of the South Carolina Department of Public Safety testified he responded to a call about an accident. Shortly thereafter, Vallin responded to another call indicating a vehicle that left the scene of the accident was at the Spinx gas station. When he arrived at the Spinx, Vallin noted the vehicle had front end damage, Lowery was standing next to the vehicle, and three or four other officers were already present and surrounding Lowery. Vallin testified he preliminarily questioned Lowery about the car accident, but it developed into a DUI investigation. Vallin testified he had a dash cam in his vehicle and it recorded the investigation. The State played Vallin's video for the trial court. In Vallin's video, Lowery made many incriminating statements, including admitting he had been driving the vehicle. Vallin admitted his questioning of Lowery was accusatory because Vallin believed Lowery was involved in the accident.

Lowery argued his statements on Vallin's video should not be admitted because he was in custody, being interrogated, and had not yet been given *Miranda*[2] warnings. The State argued the video was admissible because Vallin was investigating an accident. After reviewing Vallin's video, the court ruled Lowery was not in custody and recitation of *Miranda* warnings was not required. The court also found the questions were "fairly innocuous questions regarding the traffic accident" and asked in "furtherance of a routine traffic violation." Thus, the court found the video was admissible. The court ruled any evidence of the accident as a hit and run was inadmissible; thus, all references to the accident were to be redacted from Vallin's video.

Vallin similarly testified before the jury, additionally claiming Lowery smelled strongly of alcohol and his speech was slurred. Vallin's video was played for the jury.

Trooper Brandon Lee McNeely, of the South Carolina Highway Patrol, testified he was also present at the Spinx. McNeely testified Lowery smelled of alcohol and

---

[1] 378 U.S. 368, 376−77 (1964) (entitling a defendant in a criminal case to an evidentiary hearing on the voluntariness of a statement).

[2] *Miranda v. Arizona*, 384 U.S. 436, 471−76 (1966) (explaining a suspect's statement obtained as a result of custodial interrogation is inadmissible unless he was advised of and voluntarily waived his rights).

displayed signs of impairment. McNeely's dash cam was activated. McNeely testified the horizontal gaze nystagmus (HGN) sobriety test, which tests for involuntary eye movement due to the influence of drugs or alcohol, was given. According to McNeely, the HGN test indicated Lowery was impaired. Lowery performed a walk and turn test and a one leg stand test, which McNeely testified indicated Lowery's impairment. Lowery was placed under arrest, handcuffed, and then given *Miranda* warnings.

The court admitted McNeely's video and the video began playing for the jury. After the video showed the HGN test and at least one of the other sobriety tests, the video stopped playing. An off-the-record bench conference was held, the court commented on the State's inability to use the computer, and the State asked McNeely, "I know we didn't finish that video, but you said you [*M*]*irandized* him, correct?" and "Does [*M*]*iranda* appear on that video?" McNeely responded "yes" to both questions.[3] The State rested, and Lowery moved for a directed verdict. Lowery argued the State failed to provide evidence Lowery was driving a vehicle. The court denied the motion.

Lowery presented a defense indicating he rode with a friend that night and was not driving the vehicle. At the close of evidence, Lowery renewed his motion for a directed verdict and also argued the State failed to comply with the statute requiring the dash cam video to show all of the field sobriety tests and the *Miranda* warnings. Lowery argued, "I don't know what is on that video and what can and can't be played. The field sobriety tests weren't shown in full there and neither was [*M*]*iranda* as required by the statute shown on camera." The State argued, "[W]e addressed this at the bar a minute ago," and the parties redacted the video together. The court denied Lowery's motions, finding the State substantially complied with the statute. Lowery was convicted and sentenced to two years' imprisonment and a fine. This appeal follows.

**STANDARD OF REVIEW**

"In criminal cases, the appellate court sits to review errors of law only." *State v. Gordon*, 414 S.C. 94, 98, 777 S.E.2d 376, 378 (2015). "[A]n appellate court is bound by the trial court's factual findings unless they are clearly erroneous." *Id.*

---

[3] The video transported to this court stops playing at approximately five minutes into the twelve minute video. The final sobriety test and *Miranda* warnings are not viewable.

## LAW/ANALYSIS

### A.     Admissibility of Statements

Lowery argues the trial court erred in admitting the statements he made before being *Mirandized* because he was in custody at the time and being interrogated; thus, his statements were not freely and voluntarily made.  We agree.

"A criminal defendant is deprived of due process if his conviction is founded, in whole or in part, upon an involuntary confession." *State v. Pittman*, 373 S.C. 527, 565, 647 S.E.2d 144, 164 (2007).  The State must establish the defendant voluntarily and knowingly waived his *Miranda* rights when giving a statement. *State v. Miller*, 375 S.C. 370, 379, 652 S.E.2d 444, 449 (Ct. App. 2007).  *Miranda* warnings are only required if a suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

The State argues Lowery was not in custody because this was merely a routine traffic stop.  "[R]outine traffic stops do not constitute 'custodial interrogation' for purposes of the *Miranda* rule." *State v. Peele*, 298 S.C. 63, 65, 378 S.E.2d 254, 255 (1989) (citing *Berkemer v. McCarty*, 468 U.S. 420 (1984) and *Pennsylvania v. Bruder*, 488 U.S. 9 (1988)).  We find guidance from *State v. Easler*, in which police officers responded to a call regarding an automobile accident after one of the parties involved had left the scene.  327 S.C. 121, 125–26, 489 S.E.2d 617, 620 (1997), *overruled on other grounds by State v. Greene*, 423 S.C. 263, 283, 814 S.E.2d 496, 507 (2018).  Easler was convicted of numerous charges, including felony DUI causing death and felony DUI causing great bodily injury.  *Id.* at 125, 489 S.E.2d at 619.  The officers found Easler, who matched a description given to the officers, at the pay phone at a convenience store.  *Id.* at 126, 489 S.E.2d at 620. The officers questioned Easler about his involvement in the accident, and Easler admitted he had been involved.  *Id.*  When asked why he left the scene, Easler stated he was afraid and had no driver's license.  *Id.*  An officer requested Easler return to the scene, and Easler asked for a package he had left at the pay phone, which contained a six-pack of beer and cigarettes.  *Id.*  The officer asked Easler when he had his last drink, and Easler admitted "he'd had a Milwaukee's Best just prior to the accident . . . ."  *Id.*

The court found the case did not involve a routine traffic stop, stating, "[o]n the contrary, the officers, having been advised there had been an accident and that someone had left the scene, went looking for that individual based upon a

description given by two eyewitnesses."  *Id.* at 127, 489 S.E.2d at 620.  The court concluded the questioning was "clearly interrogation[, and t]he only remaining inquiry [was] whether Easler was 'in custody' at the time."  *Id.* at 127, 489 S.E.2d at 621.[4]

We likewise find Lowery's questioning was more than a routine traffic stop.  Vallin first went to the scene of the accident and was given a description of a vehicle.  Vallin admitted his questioning was accusatory because he believed Lowery was involved in the accident.  We have reviewed Vallin's video and, like the situation in *Easler*, we find the questioning was interrogational.  *See State v. Kennedy*, 325 S.C. 295, 303, 479 S.E.2d 838, 842 (Ct. App. 1996) ("The special procedural safeguards outlined in *Miranda* are not required if a suspect is simply taken into custody, but only if a suspect in custody is subjected to interrogation.  Interrogation is either express questioning or its functional equivalent.  It includes words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.").

_____

[4] The court found Easler was not "in custody" for purposes of *Miranda*, stating the following:

> [T]he officers had no basis to suspect Easler of DUI or to know the extent of the injuries in the accident.  Accordingly, they requested him to return to the scene of the accident where, upon seeing the injuries and realizing Easler's intoxicated state, they arrested him and issued *Miranda* warnings.  Given the totality of these circumstances, we find Easler was not 'in custody' for purposes of *Miranda*.

*Id.* at 128–29, 489 S.E.2d at 621 (footnote omitted); *see State v. Morgan*, 282 S.C. 409, 411–12, 319 S.E.2d 335, 336–37 (1984) (finding the defendant was not in custody where he and a companion returned to the scene of an accident, the companion volunteered information that they had seen the accident, and the defendant made statements "during the course of this routine investigation"); *State v. Barksdale*, 433 S.C. 324, 335, 857 S.E.2d 557, 562 (Ct. App. 2021) (finding the defendant was not in custody where the police officer responded to the scene of a traffic accident, questioned the defendant to investigate the accident, permitted the defendant to move about freely, and questioned the defendant about his alcohol consumption).

Next, we look to whether Lowery was in custody. *See State v. Williams*, 405 S.C. 263, 273, 747 S.E.2d 194, 199 (Ct. App. 2013) ("To determine whether a suspect was in custody for the purposes of *Miranda*, the Supreme Court has asked whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."); *Easler*, 327 S.C. at 128, 489 S.E.2d at 621 ("The relevant inquiry is whether a reasonable man in the suspect's position would have understood himself to be in custody."). We find Lowery was in custody.[5]

"In determining whether a suspect is 'in custody,' the totality of the circumstances, including the individual's freedom to leave the scene and the purpose, place and length of the questioning must be considered." *Easler*, 327 S.C. at 127, 489 S.E.2d at 621. "The custodial determination is an objective analysis based on whether a reasonable person would have concluded that he was in police custody." *State v. Evans*, 354 S.C. 579, 583, 582 S.E.2d 407, 410 (2003).

The *Williams* court stated the following factors have been considered by courts in determining whether an interrogation was "custodial" within the meaning of *Miranda*:

> (1) whether the contact with law enforcement was
> initiated by the police or the person interrogated, and if

---

[5] The State argues that even if Lowery was subjected to custodial interrogation, the public safety exception applies. We disagree, finding *State v. Medley*, 417 S.C. 18, 787 S.E.2d 847 (Ct. App. 2016) instructive. In *Medley*, officers chased a suspect that fled from a checkpoint. *Id.* at 22, 787 S.E.2d at 849. When he was found at his parents' house, handcuffed, and pinned to the ground, an officer "asked Medley whether he had a license and how much he had been drinking. Medley responded that he did not have a license and '[t]oo much.'" *Id.* (alteration in original). Medley was arrested and *Miranda* warnings were given. *Id.* This court held Medley was in custody and under interrogation when he made his statement about his alcohol consumption. *Id.* at 26, 787 S.E.2d at 852. In a footnote, this court summarily rejected the State's argument that the public safety exception applied and stated "[a]sking Medley how much he had to drink, although perhaps relevant to his own health and safety, was simply irrelevant to the public's safety. The only purpose for asking such a question was to obtain evidence for his DUI case." *Id.* at 27 n.5, 787 S.E.2d at 852 n.5.

by the police, whether the person voluntarily agreed to interview; (2) whether the express purpose of the interview was to question the person as a witness or suspect; (3) where the interview took place; (4) whether the police informed the person he or she was under arrest or in custody; (5) whether they informed the person he or she could terminate the interview and leave at any time or whether the person's conduct indicated an awareness of such freedom; (6) whether there were restrictions on the person's freedom of movement during the interview; (7) how long the interrogation lasted; (8) how many police officers participated; (9) whether they dominated and controlled the course of the interrogation; (10) whether they manifested a belief that the person was culpable and they had the evidence to prove it; (11) whether the police were aggressive, confrontational, or accusatory; (12) whether the police used interrogation techniques to pressure the suspect; and (13) whether the person was arrested at the end of the interrogation.

*Williams*, 405 S.C. at 276–77, 747 S.E.2d at 201.

In this case, the factors used to determine custody indicate Lowery was in custody. First, he was surrounded by numerous officers and denied his request to use the telephone or the restroom. Lowery was being questioned as a suspect rather than as a witness. The interrogation was initiated by Vallin. Lowery's movements were restricted by the officers surrounding him. Vallin admitted his interrogation was accusatory. Given these factors, we find a reasonable person in Lowery's position would have believed he was in custody. Accordingly, we find there was a custodial interrogation that necessitated *Miranda* warnings.

Our analysis next requires us to determine whether the failure to give *Miranda* warnings until after Lowery's arrest was harmless error. *See State v. White*, 410 S.C. 56, 59, 762 S.E.2d 726, 728 (Ct. App. 2014) ("[A]ny error in the failure to suppress a statement allegedly taken in violation of *Miranda* is subject to a harmless error analysis."). There was evidence Lowery was intoxicated from the officers' testimony. However, there was no direct evidence he was driving the vehicle except from his statements made during Vallin's interrogation. Therefore, Lowery's incriminating statements made prior to *Miranda* warnings, while being interrogated and in custody, could reasonably have affected the verdict. Thus, we

find the error was not harmless. *See State v. Byers*, 392 S.C. 438, 447−48, 710 S.E.2d 55, 60 (2011) ("[T]he materiality and prejudicial character of [a trial] error must be determined from its relationship to the entire case. Error is harmless when it could not reasonably have affected the result of the trial." (quoting *State v. Reeves*, 301 S.C. 191, 194, 391 S.E.2d 241, 243 (1990))).

## B.  Section 56-5-2953

Lowery argues the trial court erred in not dismissing the DUI charge when the dash cam videos failed to comply with the DUI statute because the dash cam videos "did not include all of the field sobriety tests administered, or any of the officers reading [Lowery] his *Miranda* rights." Although we disagree dismissal is required, we agree the video failed to comply with the DUI statute.

McNeely's video was not introduced until his trial testimony before the jury. It appears from the record that the State experienced technical issues in publishing McNeely's video to the jury; thus, not all of the sobriety tests were viewed by the jury, and *Miranda* warnings were not seen on the video.

Lowery was convicted of violating South Carolina's DUI statute, found in section 56-5-2930 of the South Carolina Code (2018). The statute governing the video recording of a DUI offense, section 56-5-2953 provides:

> (A) A person who violates Section 56-5-2930, 56-5-2933, or 56-5-2945 must have his conduct at the incident site and the breath test site video recorded.
> (1)(a) The video recording at the incident site must:
> (i) not begin later than the activation of the officer's blue lights;
> (ii) *include any field sobriety tests administered*; and
> (iii) include the arrest of a person for a violation of Section 56-5-2930 or Section 56-5-2933, or a probable cause determination in that the person violated Section 56-5-2945, *and show the person being advised of his Miranda rights*.
> . . .

S.C. Code Ann. § 56-5-2953(A) (2018) (emphases added). The purpose of the statute is two-fold: "The first purpose is to create direct evidence of a DUI arrest by requiring the video include any field sobriety tests administered. The

other purpose . . . is to protect the rights of the defendant by 'requiring video recording of the person's arrest and of the officer issuing *Miranda* warnings.'" *State v. Kinard*, 427 S.C. 367, 372, 831 S.E.2d 138, 140−41 (Ct. App. 2019) (internal citation omitted) (quoting *State v. Taylor*, 411 S.C. 294, 306, 768 S.E.2d 71, 77 (Ct. App. 2014)).

Statutory language "should be given a reasonable and practical construction consistent with the purpose and policy of the Act." *Gilstrap v. S.C. Budget & Control Bd.*, 310 S.C. 210, 214, 423 S.E.2d 101, 103 (1992). "Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." *Bennett v. Sullivan's Island Bd. of Adjustment*, 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct. App. 1993). "[W]hen a statute is penal in nature, it must be construed strictly against the State and in favor of the defendant. *State v. Blackmon*, 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991). Section 56-5-2953 is "a statute which governs the admissibility of certain evidence." *State v. Sawyer*, 409 S.C. 475, 481, 763 S.E.2d 183, 186 (2014).

The statute requires a video recording of all of the sobriety tests and the issuance of *Miranda* warnings. The recording at trial did not comply with the statute. Until recently, dismissal of a DUI charge was an appropriate remedy if a police officer failed to produce a video in compliance with the statute unless an exception applied. *See City of Rock Hill v. Suchenski*, 374 S.C. 12, 15, 646 S.E.2d 879, 880 (2007) (explaining dismissal as a proper remedy and noting exceptions that excuse compliance with section 56-5-2953(A) are provided in section 56-5-2953(B)). However, in *State v. Taylor*, Op. No. 28085 (S.C. Sup. Ct. filed Feb. 23, 2022) (Howard Adv. Sh. No. 7 at 24, 29), our supreme court found a violation of the statute as to *Miranda* warnings no longer required a per se dismissal of the DUI charge. The court stated any statements made by the defendant in violation of the statute should be considered the same as any other violation of *Miranda*. *Id.* The court did not apply this new rule in *Taylor*, stating it applied "from this point forward." *Id.* at 32. Based on *Taylor*, we find the remedy for the failure to meet the statutory requirement is not dismissal.

**CONCLUSION**

Accordingly, Lowery's conviction is

**REVERSED AND REMANDED.**

**MCDONALD and HEWITT, JJ., concur.**