489 S.E.2d 617

**The STATE, Respondent,**

v.

**Kenneth Wayne EASLER, Petitioner.**

**No. 24655.**

Supreme Court of South Carolina.

Heard June 3, 1997.
Decided July 28, 1997.

124

Attorney General, Charles Molony Condon, Deputy Attorney General, John W. McIntosh, Assistant Deputy Attorney General, Salley W. Elliot, Senior Assistant Attorney General, Charles H. Richardson, Columbia, and Solicitor Holman C. Gossett, Jr., Spartanburg, for respondent.

Senior Assistant Appellate Defender Wanda H. Haile, Columbia, for petitioner.

WALLER, Justice:

We granted certiorari to review the Court of Appeals' decision in *State v. Easler*, 322 S.C. 333, 471 S.E.2d 745 (Ct.App.1996). We affirm as modified.

## FACTS

On April 15, 1994, Petitioner, Kenneth Wayne Easler, while driving a pickup truck in Cherokee County, crossed the center line of a street and struck an oncoming vehicle head-on. The driver of the vehicle, Constance Roberts, was seriously injured and her 7–year old son, Cornelius, was killed. A breathalyzer test administered shortly after the collision revealed Easler's blood alcohol content to be .20.

Easler was subsequently convicted of the following offenses and sentenced as indicated: felony driving under the influence (DUI) causing death (25 years); felony DUI causing great bodily injury (15 years consecutive); assault and battery of a high and aggravated nature (ABHAN) (10 years concurrent); reckless homicide (5 years concurrent); leaving the scene of an accident (one year concurrent); and second offense driving under suspension (6 months concurrent). The Court of Appeals affirmed.

## ISSUES

1. Were statements Easler made to police taken in violation of *Miranda v. Arizona?* [1]

2. Do Easler's convictions for reckless homicide/felony DUI causing death, and ABHAN/felony DUI causing great bodily injury violate the prohibition against double jeopardy? [2]

## 1. MIRANDA

■ At trial, Easler moved to suppress certain statements he made to police shortly after the accident on the grounds they were the subject of custodial interrogation and he had not been afforded his *Miranda* warnings. The Court of Appeals found Easler was not in custody at the time he made the incriminating statements, and that the statements were not the result of "interrogation," such that no *Miranda* warnings were required. In any event, it found that, even if *Miranda* warnings were required, any error was harmless beyond a reasonable doubt. We affirm in result.

The facts giving rise to Easler's statements to police are as follows: at approximately 2:15 pm, police officer John McCall received a communication from dispatch to go to an automobile accident on Lockhart Lane. Dispatch advised that one of

---

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (suspect may not be subjected to custodial interrogation absent explanation of his rights).

2. S.C. CONST. art. I, § 12; U.S. CONST. amend. V. The fact that Easler received concurrent sentences is not dispositive of the double jeopardy issue. *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) (even if second conviction results in no greater sentence, it is an impermissible punishment as it may have collateral consequences).

the parties possibly involved in the accident had left the scene and was walking towards Highway 150 on Providence Creek Road. The individual was described as a white male wearing blue jeans and no shirt. En route to the accident, as Officer McCall and his partner pulled onto Hwy 150, they saw a young man (Easler) matching the description at the pay phone of a convenience store.[3] The officers asked Easler if he had been involved in an automobile accident, to which he replied he had and pointed in the direction of the accident. He was then asked for his identification and why he had left the scene of the accident, to which he responded he had no driver's license and was scared. The officer advised Easler, "If you would, let's just go back to the scene of the accident," and opened the door for Easler to get into the back of the police car. At this point, Easler asked McCall to retrieve a package for him which he'd left at the pay phone. The package contained a six-pack of beer and a pack of cigarettes. McCall asked Easler when he had had his last drink; Easler responded he'd had a Milwaukee's Best just prior to the accident, and indicated that his pants were wet where beer had spilled on his pants in the crash.

When they arrived at the accident scene, two eyewitnesses to the accident advised the officers that Easler had been the person involved in the accident who had left the scene. At that point, Officer McCall placed Easler under arrest and advised him of his *Miranda* rights. He was then transported to the jail for a breathalyzer test.

The Court of Appeals, citing *Berkemer v. McCarty*,[4] ruled the questions asked by police officers were the result of a routine investigation of a traffic accident such that they were not "custodial interrogation," and that Easler was not "in custody" at the time the statements were made.[5]

---

3. The store was approximately one mile from the scene of the accident.

4. 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

5. The Court of Appeals also ruled Easler's request that McCall retrieve his six-pack of beer was a spontaneous statement not subject to *Miranda* requirements. As to this ruling, the Court of Appeals was clearly correct. *See, e.g., State v. Franklin*, 299 S.C. 133, 382 S.E.2d 911 (1989) (*Miranda* inapplicable to statements which are volunteered and not the result of interrogation).

As an initial matter, we find the Court of Appeals placed undue emphasis on *Berkemer v. McCarthy*. *Berkemer* holds that routine traffic stops do not constitute "custodial interrogation" for purposes of *Miranda*. *See also Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988). The present case, however, does not involve a routine traffic stop. On the contrary, the officers, having been advised there had been an accident and that someone had left the scene, went looking for that individual based upon a description given by two eyewitnesses. Accordingly, to the extent the Court of Appeals relied on "routine traffic stop" cases, its opinion is modified.

■ Further, we disagree with the Court of Appeals' conclusion that Easler was not subjected to "interrogation." Interrogation is either express questioning or its functional equivalent. It includes words or actions on the part of police that police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). *See also State v. Franklin* 299 S.C. 133, 382 S.E.2d 911 (1989). Here, once police determined Easler had in fact been involved in the accident, they continued to question him as to why he had left the accident and when he had last had a beer. Certainly, police knew these questions were likely to elicit incriminating responses. This was clearly interrogation. The only remaining inquiry is whether Easler was "in custody" at the time.

■ *Miranda* warnings are required for official interrogations only when a suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. This language has been interpreted as meaning formal arrest or detention associated with a formal arrest. *Berkemer, supra*, 468 U.S. at 438–439, 104 S.Ct. at 3149–3150. In determining whether a suspect is "in custody," the totality of the circumstances, including the individual's freedom to leave the scene and the purpose, place and length of the questioning must be considered. *United States v. Helmel*, 769 F.2d 1306 (8th Cir.1985). The fact the investigation has focused on the

suspect does not trigger the need for *Miranda* warnings unless he is in custody. *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).[6] *Miranda* warnings were "not intended to hamper the traditional function of police officers investigating a crime." *Berkemer v. McCarty, supra* 468 U.S. at 436, 104 S.Ct. at 3148. The relevant inquiry is whether a reasonable man in the suspect's position would have understood himself to be in custody. *Bradley v. State,* 316 S.C. 255, 449 S.E.2d 492 (1994). The initial determination of whether an individual was in custody depends on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned. *State v. Sprouse,* 325 S.C. 275, 478 S.E.2d 871 (Ct.App.1996) (citing *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)).

We agree with the Court of Appeals' conclusion that, viewing the "totality of the circumstances" in this case, Easler was not in custody at the time of the interrogation. At the time officers approached Easler at the convenience store, they had not yet been to the scene of the accident, nor were they aware of the severity or extent of injuries involved in the accident. The only information they had received on the police scanner was that there had been an accident on Lockhart Lane and that one of the individuals had left the scene. Upon finding Easler, officers confirmed that he was, in fact, the individual involved in the accident. At this point, however, the officers had no basis to suspect Easler of DUI or to know the extent of the injuries in the accident.[7] Accordingly, they requested him to return to the scene of the accident where, upon seeing the injuries and realizing Easler's intoxicated state, they arrested him and issued *Miranda* warnings. Given the totality of these

---

6. For example, questioning by IRS investigators at the home of a suspect does not necessarily require *Miranda* warnings despite the fact the investigation has focused on the accused. *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). Similarly, interrogation at a police precinct has been held noncustodial where the suspect voluntarily went to the station and was free to leave. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

7. It is feasible that, at this point, officers could have believed Easler walked to the store to use the telephone to call police.

circumstances, we find Easler was not "in custody" for purposes of *Miranda.*

In any event, regardless of whether Easler was in custody at the time of the interrogation, any error in the failure to suppress his statements was harmless beyond a reasonable doubt. *See State v. Newell,* 303 S.C. 471, 401 S.E.2d 420 (Ct.App.1991) (failure to suppress evidence for *Miranda* violation harmless where record contains overwhelming evidence of guilt).

Two eyewitnesses to the accident positively identified Easler as the driver of the truck and testified they witnessed him leave the scene. Officer McCall testified Easler appeared intoxicated, had glassy, red eyes, slurred speech, had a flushed face, had strong odor of alcohol and was unsteady on his feet. He also testified that a license check of Easler's record revealed his license had been suspended. A breathalyzer test revealed a blood alcohol content of .20. Moreover, at trial, Easler admitted he'd been drinking beer, and that he had been the driver of the truck when the accident occurred. The overwhelming evidence of Easler's guilt renders any *Miranda* violation harmless.

## 2. DOUBLE JEOPARDY

Easler next asserts his convictions for reckless homicide and felony DUI causing death, and ABHAN and felony DUI causing great bodily injury violate the prohibition against double jeopardy. The Court of Appeals, applying the *Blockburger v. United States* [8] "same elements" test, found no double jeopardy violation. The Court of Appeals also noted that *Grady v. Corbin* 's [9] "same conduct" analysis is no longer applicable in double jeopardy analysis. We affirm.

The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction, and protects against multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53

---

**8.** 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**9.** 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

L.Ed.2d 187 (1977); *State v. Amerson*, 311 S.C. 316, 428 S.E.2d 871 (1993).[10] In *Blockburger* the United State Supreme Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, "the test to determine whether these are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.[11] In 1990, in *Grady v. Corbin*, the Court expanded *Blockburger* analysis, holding that even if two offenses do not have the same elements, double jeopardy "bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 510, 110 S.Ct. at 2087 (emphasis supplied).[12]

*Grady v. Corbin* was overruled, however, in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and this Court has not specifically addressed the impact of the Supreme Court's decision in *Dixon* on double jeopardy analysis in this state. Although *Dixon* holds *Blockburger* is the exclusive federal standard for reviewing double jeopardy violations under the Fifth Amendment, the issue remains whether Article I, section 12 of the South Carolina Constitution affords Easler greater protection than does the

---

**10.** The cases have evolved into two lines: successive prosecution cases and multiple punishment for the same offense cases.

**11.** Notwithstanding *Blockburger* a court may conclude there is no double jeopardy violation even if the same elements test is met where the legislature clearly intends multiple punishments for a single act. *See Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *State v. Wilson*, 311 S.C. 382, 388–390, 429 S.E.2d 453 (1993) (when there are multiple punishments imposed in the same trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended) (Justice Toal concurring).

**12.** A majority of the *Grady* Court recognized that the *Blockburger* test applied only to multiple punishments because multiple prosecutions raised different concerns which *Blockburger* did not address. 495 U.S. at 518–519, 110 S.Ct. at 2091–2092. Therefore, the Court adopted the same conduct standard originally suggested in *Illinois v. Vitale, supra*.

Fifth Amendment.[13]

As an initial matter we note that *Grady* was intended to apply only to successive prosecution cases.[14] *Accord Wisconsin v. Kurzawa,* 180 Wis.2d 502, 509 N.W.2d 712, 717 (1994) *cert. denied* 512 U.S. 1222, 114 S.Ct. 2712, 129 L.Ed.2d 839 (1994) (recognizing there is no dispute that in cases involving multiple punishments in a single prosecution, *Blockburger* same elements test is the accepted test). Accordingly, as this is a multiple punishment arising from a single prosecution case, *Grady* has no application here.

Nevertheless, for the benefit of bench and bar, we clarify our position with regard to the continued viability of *Grady* analysis in successive prosecution cases. We hereby affirm the Court of Appeals' abandonment of the *Grady v. Corbin* same conduct test.[15]

This Court first adopted the same conduct analysis in *State v. Grampus, supra.* In *Grampus,* anticipating the holding in *Grady,* we relied on dictum in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), to adopt a same conduct

---

**13.** State courts may afford more expansive rights under state constitutional provisions than the rights which are conferred by the Federal Constitution. *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *State v. Austin,* 306 S.C. 9, 409 S.E.2d 811 (Ct.App.1991).

**14.** This Court has adopted the *Grady* same conduct analysis in several successive prosecution cases. *See State v. Grampus,* 288 S.C. 395, 343 S.E.2d 26 (1986); *State v. Carter,* 291 S.C. 385, 353 S.E.2d 875 (1987); *State v. Magazine,* 302 S.C. 55, 393 S.E.2d 385 (1990); *State v. Wilson,* 311 S.C. 382, 429 S.E.2d 453 (1993). One case of this Court, *State v. Walsh,* 300 S.C. 427, 388 S.E.2d 777 (1988), could arguably be read as applying a "same conduct" analysis in a multiple punishment case. However, *Walsh* was decided prior to *Grady v. Corbin.* Further, the order on rehearing in *Walsh* makes clear that the basis for the Court's finding of a double jeopardy violation rests in its interpretation of the legislative intent that a single occurrence of assault with intent to kill and pointing a firearm were not intended to be subject to cumulative punishment. Accordingly, to the extent *Walsh* may be read as applying a "same conduct" analysis in a single prosecution case, it is overruled.

**15.** *See State v. Moyd,* 321 S.C. 256, 468 S.E.2d 7 (Ct.App.1996); *State v. Lewis,* 321 S.C. 146, 467 S.E.2d 265, (Ct.App.1996) (holding that *Blockburger* remains the only test of double jeopardy for successive prosecutions as well as for multiple punishments in a single prosecution).

analysis in a successive prosecution case. *Vitale* was a Fifth Amendment case and nothing in our opinion in *Grampus* indicates reliance on the South Carolina constitution. *See* McAninch, *Unfolding the Law of Double Jeopardy*, 44 S.C.L.Rev. 411, 471 at n. 454 (1993). Nor do the other cases of this Court applying a same conduct analysis rely on state law, as opposed to the Fifth Amendment. To the contrary, since the federal Double Jeopardy Clause was made applicable to the states in *Benton v. Maryland*,[16] the courts of this state have never interpreted the state double jeopardy provision independently of the Fifth Amendment. *Id.* at 418; *cf. State v. Jacobson*, 545 N.W.2d 152 (N.D.1996); *State v. Capak*, 271 N.J.Super. 397, 638 A.2d 918 (1994) (double jeopardy analysis no different under state law than under federal constitutional law). Moreover, Article I, section 12 of the S.C. Constitution is essentially identical to the Fifth Amendment and, on its face, confers no greater rights than the federal constitution. Additionally, the *Grady* test was only the law for a short span of three years and was widely criticized for "being unsupported by precedent, for allowing unjust results, and for proving unworkable in practice." *See Wisconsin v. Kurzawa*, 509 N.W.2d at 721. Finally, other jurisdictions addressing the matter post-*Dixon* have abandoned the *Grady* same conduct analysis and ruled that *Blockburger* is the only remaining double jeopardy test. *See Wisconsin v. Kurzawa, supra; State v. Gocken*, 127 Wash.2d 95, 896 P.2d 1267, 1270–1273 (1995); *Flores v. Texas*, 906 S.W.2d 133 (Tex.App.—San Antonio 1995); *State v. Crawley*, 96 Ohio App.3d 149, 644 N.E.2d 724 (1994); *State v. Murray*, 644 So.2d 533 (Fla.App.1994).

 Like these courts, we decline to extend broader protection under our state constitution than that afforded under the federal constitution. Accordingly, we hold *Blockburger* is the only remaining test for determining a double jeopardy violation, in both multiple punishment and successive prosecution cases. Therefore, the only remaining inquiry in the present case is whether the offenses with which Easler is charged survive the *Blockburger* same elements test.

 This Court has held that reckless homicide is not a lesser included offense of felony DUI causing death, as felony

---

**16.** 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

DUI does not require proof of recklessness. *State v. Cribb,* 310 S.C. 518, 426 S.E.2d 306 (1992). *See also State v. Carter,* 291 S.C. 385, 353 S.E.2d 875 (1987) (recognizing that a defendant may be convicted of both offenses in one trial). Similarly, felony DUI requires proof of the element of driving under the influence, whereas reckless homicide does not. Clearly, the two offenses do not meet *Blockburger*'s same elements test, and there is no double jeopardy problem in prosecuting Easler for both.

Further, we find the elements of ABHAN and felony DUI survive the *Blockburger* analysis. The elements of ABHAN are 1) the unlawful act of violent injury to another, accompanied by circumstances of aggravation.[17] *State v. Jones,* 133 S.C. 167, 130 S.E. 747 (1925), *overruled in part on other grounds, State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996). Felony DUI causing great bodily injury requires proof 1) the actor drove a vehicle while under the influence of drugs or alcohol, 2) he/she did an act forbidden by law or neglected a duty imposed by law, and 3) the act proximately caused great bodily injury to another. *State v. Cribb, supra.* As noted by the Court of Appeals, felony DUI requires proof the defendant was driving under the influence, clearly not an element of ABHAN.

As to the element of ABHAN which is not contained in felony DUI, ABHAN requires proof of "circumstances of aggravation," something which is not required for felony DUI. In *Illinois v. Vitale,* 447 U.S. 410, 419–420, 100 S.Ct. 2260, 2266–2267, 65 L.Ed.2d 228 (1980), the Court held, under *Blockburger* analysis, that if manslaughter by automobile did not always entail proof of failure to reduce speed, then the offenses of manslaughter by automobile and failing to reduce speed to avoid an accident were not the "same offense" for double jeopardy purposes. "The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the [lesser] offense to establish an element of [the greater offense] would not be sufficient to bar the latter

---

17. The circumstances of aggravation include: use of a deadly weapon, infliction of serious bodily injury, intent to commit a felony, disparity in age, physical condition or sex, indecent liberties, purposeful infliction of shame, resistance of lawful authority, and others. *State v. Jones supra.*

prosecution under the Double Jeopardy Clause.... The lesser offense is included in the greater only if each of its elements is always a necessary element of the greater offense." *State v. Bourn,* 139 Vt. 14, 421 A.2d 1281 (1980) (citing *Illinois v. Vitale, supra*) (emphasis supplied). Although ABHAN may involve the proof of serious bodily injury as an aggravating circumstance, serious bodily injury is not always an element of ABHAN, as there are other aggravating circumstances which may give rise to ABHAN. *Cf. State v. Brown,* 269 S.C. 491, 238 S.E.2d 174 (1977) (recognizing that serious bodily injury is not an essential element of the offense of aggravated assault); *State v. DeBerry,* 250 S.C. 314, 157 S.E.2d 637 (1967) *cert. denied* 391 U.S. 953, 88 S.Ct. 1857, 20 L.Ed.2d 867 (1968). Accordingly, we find that each of the elements of ABHAN is not always a necessary element of felony DUI such that there is no double jeopardy violation under *Blockburger* analysis. We therefore affirm the Court of Appeals' holding.

## CONCLUSION

As this is not a "routine traffic stop" case, we modify the Court of Appeals' opinion insofar as it relied on *Berkemer v. McCarty*'s "routine traffic stop" analysis. Further, we modify the Court of Appeals' opinion to the extent it found Easler was not subjected to interrogation. We nonetheless affirm in result as we find the totality of the circumstances demonstrates that Easler was not "in custody" at the time of the interrogation, such that *Miranda* warnings were not required. In any event, in light of the overwhelming evidence of guilt, it is clear that any *Miranda* violation in this case was harmless beyond a reasonable doubt.

As to the double jeopardy issue, we affirm the Court of Appeals' holding that *Blockburger* is the only remaining test to determine a double jeopardy violation. Applying a *Blockburger* analysis, we find no double jeopardy violation in this case. The judgment below is

**AFFIRMED AS MODIFIED.**

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.