# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Appellant,

v.

Leon LaGwan Barksdale, Respondent.

Appellate Case No. 2017-002306

———————

Appeal From Laurens County
Donald B. Hocker, Circuit Court Judge

———————

Opinion No. 5812
Heard October 12, 2020 – Filed March 24, 2021

———————

## REVERSED AND REMANDED

———————

Attorney General Alan McCrory Wilson, and Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., both of Columbia; and Solicitor David Matthew
Stumbo, of Greenwood, all for Appellant.

Appellate Defender David Alexander, of Columbia, for
Respondent.

———————

**WILLIAMS, J.:**  In this criminal appeal, the State appeals the trial court's
suppression of incriminating statements that Leon L. Barksdale made regarding his
alcohol consumption prior to a traffic accident.  The State argues (1) the record
contains no evidence to support the court's ruling that Barksdale was in custody at
the time he was questioned regarding his alcohol consumption; (2) the court erred

by utilizing an incorrect definition of "custody" as set forth in *Miranda v. Arizona*[1] and its progeny; and (3) the court improperly relied on the subjective intentions and knowledge of the officer that questioned Barksdale rather than the totality of the circumstances.  We reverse and remand.

## FACTS/PROCEDURAL HISTORY

On the evening of October 21, 2013, at approximately 9:15 P.M., Officer Patrick Craven of the Laurens Police Department responded to a traffic accident involving a sedan and a motorcycle.  EMS and other officers were already at the scene of the accident when Officer Craven arrived.  After learning that the other officers had not yet determined the sedan driver's identity, Officer Craven began asking individuals at the scene who was driving, and Barksdale answered he was the driver.  Officer Craven asked Barksdale for his driver's license, car registration, and proof of insurance, and he allowed Barksdale to return to his car for the requested documentation.  After Barksdale left to find the documentation, Officer Craven immediately remarked to another officer "I think he has been drinking," "that boy's been drinking," and "he smells like alcohol."  Officer Craven then asked another officer to accompany him while he spoke with Barksdale to confirm he smelled alcohol on Barksdale's person.

When Barksdale returned with the requested documentation, Officer Craven asked him, "How much you had to drink tonight?  I can smell it on you.  I just gotta ask."  Barksdale did not answer, and Officer Craven repeated the question multiple times.  Barksdale then confessed that he had consumed a forty-ounce beer at home before the accident occurred. Following his confession, EMS requested to speak with Barksdale to evaluate his health.

As EMS spoke with Barksdale, Officer Craven found an open, cold, forty-ounce beer bottle near Barksdale's car, which he suspected belonged to Barksdale.  The bottle matched an unopen beer found in the passenger compartment of Barksdale's car.  At that point, Officer Craven decided to administer field sobriety tests to Barksdale and asked other officers to not "let [Barksdale] walk off."  Officer Craven then moved his patrol vehicle to an adjacent gas station parking lot so the dash camera could better capture footage of the field sobriety tests.[2]  After Officer

---

[1] 384 U.S. 436 (1966).
[2] During the first ten minutes of the encounter between Officer Craven and Barksdale, Officer Craven's car was parked behind several other cars.  Neither

Craven moved his vehicle, the camera showed Barksdale sitting in the passenger seat of his car speaking with EMS.  Officer Craven spoke with EMS, and he asked Barksdale to follow him to the front of his car.  Officer Craven informed Barksdale he was not under arrest and asked if he would submit to field sobriety tests.  Barksdale agreed to take the tests.

Officer Craven administered five different field sobriety tests.  Immediately after concluding the tests, Officer Craven asked Barksdale to rate his current sobriety on a scale of one to ten, with ten being the most inebriated Barksdale had ever been prior to that night.  Barksdale responded, "I wouldn't say I'm drunk.  But I'd say [about] five."  Officer Craven then asked Barksdale if he could feel the effects of alcohol, and Barksdale responded "yeah, I can feel that."  Officer Craven then placed Barksdale under arrest for driving under the influence of alcohol and *Mirandized* him.  Thereafter, Barksdale admitted that the open beer found near his car was his and he threw it out to avoid an open container charge.

The State charged Barksdale with felony driving under the influence, and a jury trial commenced on October 23, 2017.  After the jury was empaneled but before trial began, Barksdale objected to the admission of his statements to Officer Craven pertaining to his alcohol consumption.  The trial court held a *Jackson v. Denno*[3] hearing during which Officer Craven testified regarding his encounter with Barksdale and the court reviewed Officer Craven's dash camera footage.

During the hearing, Barksdale argued that all statements he made before receiving *Miranda* warnings should have been suppressed as a violation of his Fifth Amendment rights because he was under custodial interrogation from the outset of Officer Craven's arrival at the scene.  Barksdale asserted he was in custody because (1) he was involved in a traffic accident and bound by law to remain at the scene, (2) the nature of the accident scene was not merely a routine traffic stop, (3) Officer Craven instructed other officers not to allow Barksdale to "walk off," (4) the interrogation process was prolonged, (5) Barksdale was immediately identified as a suspect, and (6) EMS and several officers were on the scene.

The State argued Barksdale's incriminating statements were admissible because Officer Craven asked the questions as a routine investigation of a traffic accident.  The State also asserted that Barksdale could not have heard Officer Craven instruct the other officers to not let Barksdale leave the scene because EMS was speaking

Officer Craven nor Barksdale were visible on dash camera footage until Officer Craven moved his car to capture the field sobriety tests.
[3] 378 U.S. 368 (1964).

with Barksdale at that time and, therefore, it should not be considered in evaluating the totality of the circumstances.

The trial court suppressed all of Barksdale's pre-*Miranda* statements made to Officer Craven. The court found that "based upon the totality of the circumstances, it certainly [was] clear . . . that as soon as Officer Craven started talking [to Barksdale] he smelled alcohol." The court weighed the fact that Officer Craven never advised Barksdale that he was not in custody. The court noted that (1) once Officer Craven smelled alcohol on Barksdale, he was not "in any position to allow Mr. Barksdale to leave the scene" and (2) several minutes after smelling the alcohol, Officer Craven advised other officers to not let Barksdale leave. In conclusion, the court determined that "at the very outset Officer Craven would not have allowed [Barksdale] to leave" and *Miranda* warnings were therefore required.

Immediately after the court made its ruling, the State conceded that it no longer had a case against Barksdale and dismissed the charges. This appeal followed.

## ISSUE ON APPEAL

Did the trial court err in suppressing Barksdale's statements based on a finding that Barksdale was in custody at the time he was questioned regarding his alcohol consumption?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Jenkins*, 412 S.C. 643, 650, 773 S.E.2d 906, 909 (2015). The decision to admit or exclude evidence is within the sound discretion of the trial court. *State v. Jackson*, 384 S.C. 29, 34, 681 S.E.2d 17, 19 (Ct. App. 2009). This court will not disturb the trial court's admissibility determinations absent a prejudicial abuse of discretion. *State v. Adkins*, 353 S.C. 312, 326, 577 S.E.2d 460, 468 (Ct. App. 2003). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *State v. Irick*, 344 S.C. 460, 464, 545 S.E.2d 282, 284 (2001). "Appellate review of whether a person is in custody is confined to a determination of whether the ruling by the trial [court] is supported by the record." *State v. Evans*, 354 S.C. 579, 583, 582 S.E.2d 407, 409 (2003).

## LAW/ANALYSIS

The State argues the trial court erred in suppressing Barksdale's statements pertaining to his alcohol consumption because the court misinterpreted the definition of "custody." Specifically, the State contends the court improperly

relied upon Officer Craven's subjective intent and views in determining if Barksdale was in custody at the time he made the incriminating statements. We agree.

We find the trial court's determination that Barksdale was in custody when Officer Craven questioned him regarding his alcohol consumption was based on an error of law. The Fifth Amendment of the United States Constitution states "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." This constitutional safeguard protects individuals from overzealous police practices and limits the admissibility of incriminating statements, "whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless [the prosecution] demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. "A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his [constitutional] rights." *State v. Miller*, 375 S.C. 370, 379, 652 S.E.2d 444, 449 (Ct. App. 2007).

*Miranda* warnings, the procedural safeguards used to secure the privilege against self-incrimination, are required for official interrogation "only when a suspect 'has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *State v. Easler*, 327 S.C. 121, 127, 489 S.E.2d 617, 621 (1997), (quoting *Miranda*, 348 U.S. at 444), *overruled on other grounds by State v. Greene*, 423 S.C. 263, 814 S.E.2d 496 (2018). A significant deprivation of freedom "has been interpreted as meaning formal arrest or detention associated with a formal arrest." *Id.* at 127, 489 S.E.2d at 621; *see also Howes v. Fields*, 565 U.S. 499, 508–09 (2012) ("'[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion.").

Whether an individual is in "custody" is determined based on the totality of the circumstances surrounding the interrogation, including "the location, purpose, and length of interrogation, and whether the suspect was free to leave the place of questioning." *State v. Medley*, 417 S.C. 18, 25, 787 S.E.2d 847, 851 (Ct. App. 2016) (quoting *State v. Navy*, 386 S.C. 294, 301, 688 S.E.2d 838, 841 (2010)). "The initial determination of whether an individual was in custody depends on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Sprouse*, 325 S.C. 275, 282, 478 S.E.2d 871, 875 (Ct. App. 1996). "The relevant inquiry is whether a reasonable man in the suspect's position would have understood himself to be in custody." *Easler*, 327 S.C. at 128, 489 S.E.2d at 621. Even if an officer focuses his inquiries on a suspect, *Miranda* warnings are not warranted if the

setting is non-custodial. *Id.* at 127–28, 489 S.E.2d at 621. *Miranda* warnings were "not intended to hamper the traditional function of police officers in investigating crime." *See Miranda*, 384 U.S. at 477.

Examining the record, we find the trial court erred in determining Barksdale was in custody when Officer Craven questioned him regarding his alcohol consumption. Initially, the trial court erred by primarily considering Officer Craven's subjective intent and knowledge in determining whether Barksdale was in custody rather than whether a reasonable person in Barksdale's position would believe he was in custody. *See Sprouse*, 325 S.C. at 282, 478 S.E.2d at 875 (emphasizing that the relevant inquiry when determining whether a suspect is in custody revolves around the *objective circumstances* surrounding the encounter and not the subjective views harbored by the investigator or the suspect); *see also State v. Hill*, 425 S.C. 374, 381, 822 S.E.2d 344, 348 (Ct. App. 2018) (stating an investigating officer's testimony that a defendant was not in custody was weightless as the proper inquiry is objective and focuses instead on whether or not a person in the defendant's shoes would believe he was free to stop the questioning and depart). Specifically, the court considered Officer Craven's subjective knowledge and intent when it noted (1) Officer Craven smelled alcohol on Barksdale's person and was in no position to let Barksdale leave the scene after doing so; (2) officer Craven told Barksdale he was not under arrest but failed to inform him that he was not in custody; and (3) Officer Craven would not have let Barksdale leave the scene and told other officers to prevent Barksdale from leaving.

Moreover, the record does not support a finding that Barksdale was deprived of his freedom of movement in any significant way or detained in such a way as to mimic formal arrest. *See Easler*, 327 S.C. at 127, 489 S.E.2d at 621 ("[A significant deprivation of freedom] has been interpreted as meaning formal arrest or detention associated with a formal arrest"). Regarding freedom of movement, the Supreme Court stated the following:

> [I]n order to determine how a suspect would have "gauge[d]" his "freedom of movement," courts must examine "all of the circumstances surrounding the interrogation." Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.

*Howes*, 565 U.S. at 509 (second alteration in original) (citations omitted) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam)).

The Court further noted that an individual's freedom of movement is but one part of the custody analysis and past decisions did not "'accord talismanic power' to the freedom-of-movement inquiry, and . . . instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* (citation omitted) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984)). The Court concluded its jurisprudence established "that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." *Id.* (quoting *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010)).

In *State v. Kerr*, this court found the defendant was not entitled to *Miranda* warnings during questioning because the officer on the scene was performing a routine investigation of a traffic accident. 330 S.C. 132, 146, 498 S.E.2d 212, 219 (Ct. App. 1998). In that case, the defendant collided with another car on I-26, and the first officer on the scene placed the defendant into the back of his police car but did not place him under arrest. *Id.* at 138–39, 498 S.E.2d at 214–15. A highway patrolman later arrived at the scene and noticed a strong smell of alcohol while he questioned the defendant. *Id.* at 139, 498 S.E.2d at 215. The patrolman then asked the defendant if he had been drinking, and the defendant responded that he had several drinks earlier in the night. *Id.* The patrolman subsequently administered field sobriety tests, which the defendant failed, and placed the defendant under arrest for driving under the influence. *Id.* Reasoning the subjective views of the investigating officer and the defendant were irrelevant, this court found *Miranda* warnings were not required because the defendant was not in custody as the patrolman was merely conducting a routine investigation into the cause of a traffic accident when the defendant admitted to his prior alcohol consumption. *Id.* at 146, 498 S.E.2d at 219.

Similarly, in *State v. Morgan*, our supreme court ruled a defendant was not entitled to *Miranda* warnings while officers were investigating a traffic accident. 282 S.C. 409, 412, 319 S.E.2d 335, 336–37 (1984). In that case, the defendant was racing another car, and the other car lost control and crashed. *Id*. at 410, 319 S.E.2d at 336. The defendant fled the scene but returned to the scene minutes later. *Id.* Officers responding to the accident spoke with the defendant, and they arrested him after he admitted that he had consumed alcohol and marijuana before the race. *Id*. at 410–11, 319 S.E.2d at 336. The court ruled *Miranda* warnings were not required because "[a] traffic accident had just occurred" and "[w]hat followed was a routine investigation into the cause." *Id.* at 411–12, 319 S.E.2d at 336–37.

Like the officers in *Kerr* and *Morgan*, Officer Craven responded to the scene of a traffic accident and questioned Barksdale to investigate the accident's cause. *See Morgan*, 282 S.C. at 411–12, 319 S.E.2d at 336–37; *Kerr*, 330 S.C. at 145, 498 S.E.2d at 219. Because Officer Craven's questions regarding Barksdale's alcohol consumption occurred during a routine investigation, *Miranda* warnings were not warranted. *See Morgan*, 282 S.C. at 411–12, 319 S.E.2d at 336–37 (holding *Miranda* warnings were not required for statements made at the scene of a traffic accident if the defendant was not in custody or significantly deprived of his freedom); *see also Kerr*, 330 S.C. at 145, 498 S.E.2d at 219 (reaching a similar conclusion as *Morgan*). Further, the record does not reflect that Barksdale was detained or limited in his freedom of movement such that a reasonable person would believe he was in custody. Officer Craven did not place Barksdale in handcuffs until after he failed a litany of field sobriety tests. Prior to making the statements, Barksdale was able to move about the accident scene freely, and Officer Craven allowed him to walk away to get his license and registration and to speak with EMS regarding potential injuries. EMS did not speak with Barksdale under special orders from Officer Craven, and EMS allowed Barksdale to sit in his own car while they checked him for injuries. *See Howes*, 565 U.S. at 509 (stating the presence or absence of physical restraints during questioning is a relevant factor for determining whether the suspect was in custody); *cf. Medley*, 417 S.C. at 26, 787 S.E.2d at 851 (holding a DUI suspect was in custody when he was interrogated about his alcohol consumption because the suspect was handcuffed and pinned to the ground); *State v. Ledford*, 351 S.C. 83, 88, 567 S.E.2d 904, 907 (Ct. App. 2002) (finding a DUI suspect was in custody when an officer carried the suspect from the suspect's home to the patrol car and questioned the suspect as he propped him against the car to handcuff him); *State v. Newell*, 303 S.C. 471, 474–75, 477, 401 S.E.2d 420, 423–24 (Ct. App. 1991) (ruling a DUI suspect was in custody when questioned regarding a traffic accident as officers transported her to the detention center in a police car after they placed her under arrest).

Furthermore, Barksdale's interrogation occurred at the scene of the traffic accident and was effectuated in a public place—the side of a public thoroughfare. *See Howes*, 565 U.S. at 509 (stating the location of the questioning is a relevant factor for determining whether the suspect was in custody). Many people were around to witness the interaction between Barksdale, Officer Craven, and the other officers, some of whom were pedestrians and EMS. Additionally, the presence of multiple officers at the scene of an accident has not deterred our appellate courts from finding a DUI suspect was not in custody at the time of interrogation. *See Easler*, 327 S.C. at 126, 128–29 489 S.E.2d at 620, 621 (stating the DUI suspect was not in custody while being questioned in the presence of multiple police officers);

*Morgan*, 282 S.C. at 410, 412, 319 S.E.2d at 336, 337 (finding the suspect was not in custody while speaking with three police officers); *Kerr*, 330 S.C. at 139, 146, 498 S.E.2d at 216, 219 (holding a DUI suspect was not in custody after one officer placed him in the back of his patrol car and a different officer questioned him). Under these facts, we find a reasonable person in Barksdale's position would not have believed himself to be in custody.

Finally, Officer Craven telling other officers not to allow Barksdale to "walk off" does not support a finding of custody. EMS was speaking with Barksdale at the time Officer Craven made the statement, and there was no evidence that Barksdale heard him or that the statement was relayed to Barksdale. Even if Barksdale heard Officer Craven's statement, such a statement, along with the facts discussed above, would not amount to a significant deprivation of Barksdale's freedom of movement that would cause a reasonable person to believe he was in custody. *See State v. Walker*, 430 S.C. 411, 419, 844 S.E.2d 405, 409 (Ct. App. 2020) (emphasizing that even though a suspect may subjectively feel unable to leave or terminate an encounter with an officer or may be deprived of his freedom to an extent, that deprivation must be "significant" at the time the suspect is interrogated).

Based on the foregoing, we find the record does not support a finding that Barksdale was in custody at the time Officer Craven questioned him regarding his alcohol consumption. Although we acknowledge that individuals who are subjected to questioning by police officers are likely to feel intimidated, this inherent intimidation alone is insufficient to warrant *Miranda* warnings. *See State v. Neeley*, 271 S.C. 33, 41, 244 S.E.2d 522, 527 (1978) ("Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer [*Miranda*] warnings to everyone whom they question." (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977))).

Accordingly, we find the trial court erred in finding Barksdale was in custody and suppressing Barksdale's statements.[4]

---

[4] As to Barksdale's argument that he was in custody because a statute precluded him from leaving the scene of the accident, this argument is without merit. Under section 56-5-1220(A) of the South Carolina Code (2012), no motorist involved in a traffic accident is allowed to leave the scene of a wreck unless to seek emergency assistance. A statutory restriction on leaving an accident does not amount to a

**CONCLUSION**

Based on the foregoing, the trial court's ruling is

**REVERSED** and the matter is **REMANDED** for a new trial.

**HUFF and GEATHERS, JJ., concur.**

---

"formal arrest or detention associated with a formal arrest" that equates to custody. *See Easler*, 327 S.C. at 127, 489 S.E.2d at 621.