# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Phillip Wayne Lowery, Respondent.

Appellate Case No. 2022-000806

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Greenville County
Robin B. Stilwell, Circuit Court Judge

---

Opinion No. 28217
Heard March 26, 2024 – Filed July 17, 2024

---

## REVERSED IN PART AND AFFIRMED IN PART

---

Attorney General Alan McCrory Wilson and Assistant
Attorney General Ambree Michele Muller, both of
Columbia; and Solicitor William Walter Wilkins, III, of
Greenville, all for Petitioner.

Chief Appellate Defender Robert Michael Dudek and
Appellate Defender Gary Howard Johnson, II, both of
Columbia, for Respondent.

---

**JUSTICE JAMES:**  Phillip Wayne Lowery was convicted of second offense driving under the influence.  Lowery concedes he was under the influence, but he argues the only evidence he was driving a vehicle came from his statements to a patrol trooper that he claims were inadmissible under *Miranda v. Arizona*.[1]  The court of appeals agreed and reversed the conviction and remanded for a new trial. *State v. Lowery*, 436 S.C. 349, 872 S.E.2d 197 (Ct. App. 2022).  We reverse the court of appeals on this issue.  Lowery also argues the charge should be dismissed because field sobriety tests and *Miranda* warnings from another trooper's dash camera video were not shown to the jury.  The court of appeals held dismissal of the charge was not required.  *Id.* at 361, 872 S.E.2d at 203.  We affirm the court of appeals on this issue.

## I.

Trooper David Vallin of the South Carolina Department of Public Safety responded to the scene of a two-vehicle accident in Greenville County.  One of the involved vehicles left the scene before law enforcement arrived.  Upon learning the departed vehicle was possibly at a Spinx gas station a short distance away, Trooper Vallin drove to the Spinx and encountered Lowery and a vehicle with a flat right-front tire in the parking lot.  Lowery's daughter was the owner of the vehicle.

Trooper Vallin's eight-minute dash camera video was played for the jury. During the first thirty-three seconds of the video, Trooper Vallin asked Lowery where he had been and if he knew his tire was flat.  Lowery told Trooper Vallin he "left Wild Country," "I pulled in here to call somebody to come help me change my tire," "did not know I hit nobody," and "I pulled in here and my tire was flat."  Vallin asked Lowery how much he had had to drink, and Lowery responded he drank about five twelve-ounce beers.  Lowery also told Trooper Vallin he was the only person in the vehicle.

Shortly thereafter, the video shows Trooper Vallin talking on his shoulder radio to another officer.  Lowery was standing next to Vallin, but Vallin was not speaking to Lowery.  Lowery then spontaneously stated, "I don't remember hitting nobody.  I remember just pulling in here to get something to eat.  If I hit somebody, I'm sorry.  I just wanted to come by here—I called my buddy over here to come get me.  I just wanted to get something to eat.  If I hit somebody, I'm really sorry."  Vallin ended his radio conversation and told another officer standing nearby that he could

---

[1] 384 U.S. 436 (1966).

leave the scene. Vallin then briefly acknowledged Lowery's spontaneous statements by saying "okay" and "I gotcha" as Lowery continued to talk. Trooper Vallin then instructed Lowery to stand by the disabled vehicle and asked Lowery who he wanted to tow it. As they discussed towing the vehicle, Lowery spontaneously stated, "I guess I screwed up. I can't lie about it."

Trooper Brandon McNeely also testified for the State. His testimony is relevant to Lowery's argument that the State did not comply with the provisions of South Carolina Code section 56-5-2953, which requires, in part, the videotaping of *Miranda* warnings and field sobriety tests at a DUI incident site. McNeely arrived at the Spinx after Trooper Vallin and administered three field sobriety tests to Lowery—the horizontal gaze nystagmus (HGN) test, the walk and turn test, and the one leg stand test. Thereafter, he administered *Miranda* warnings to Lowery. The trial court granted Lowery's in limine request for Trooper McNeely's dash camera video to be redacted to delete any references that the collision was a hit and run and that a law enforcement officer's child was driving the other vehicle. The night before McNeely testified, the solicitor and defense counsel viewed the video together and agreed upon redactions. Lowery did not object to the sobriety tests and *Miranda* warnings being on the redacted video, and Lowery has never argued the tests and warnings were not on the redacted video.

During Trooper McNeely's testimony the following day, the State introduced the redacted video without objection from Lowery. At the beginning of the redacted video, McNeely asked Lowery several questions without Mirandizing him. Lowery told Trooper McNeely he was not driving and that someone dropped him off in the Spinx parking lot. The redacted video showed the entire HGN test. However, the video showed only part of the walk and turn test before freezing and going no further. None of the one leg stand test was shown on the corrupted video, nor were McNeely's *Miranda* warnings. Lowery did not object to the corrupted video, and McNeely then testified without objection that he administered the walk and turn test and the one leg stand test and that Lowery showed signs of impairment during those tests and during the HGN test. During cross-examination of Trooper McNeely, defense counsel elicited testimony that Lowery was "stumbling around" and slurring his words before McNeely began the sobriety tests. McNeely also testified without objection that he placed Lowery under arrest for DUI and Mirandized him.

Following Trooper McNeely's testimony, the State rested. Lowery moved for a directed verdict, arguing only that the State failed to prove Lowery was driving a vehicle. Lowery did not at that time cite any video deficiencies or any of the

videotaping requirements of section 56-5-2953.  The trial court denied the motion.

Lowery presented his defense.  He testified he did not drive a vehicle that night and that his friend Kim Pryor dropped him off at the Spinx so he could check on his daughter's disabled vehicle.  Lowery admitted he did not remember a lot about the night of his arrest because he was "severely intoxicated."  Ms. Pryor's testimony tracked Lowery's.

After resting, Lowery raised for the first time the issue of Trooper McNeely's corrupted video.  Defense counsel argued he could not have objected at the time the video was admitted because he did not know what was going to happen.  He also stated he did not know what was on the video and that the full field sobriety tests and *Miranda* warnings were not shown to the jury as required by statute.  Lowery moved for a directed verdict on the ground that the State did not "meet the requirements as required under the DUI law [about] what needs to be shown."  The solicitor argued defense counsel knew what was on McNeely's video because he and defense counsel had worked together the night before to redact the video.  The trial court denied Lowery's motion and determined the State had "substantially complied" with provisions in section 56-5-2953 requiring field sobriety tests and *Miranda* warnings to be shown on video.

## II. Admissibility of Statements

The admissibility of Lowery's statements to Trooper Vallin presents a mixed question of fact and law and therefore involves a two-step inquiry: appellate courts review "the trial court's factual findings for any evidentiary support, but the ultimate legal conclusion" to be drawn from those facts is a question of law the appellate court reviews de novo.  *State v. Frasier*, 437 S.C. 625, 633-34, 879 S.E.2d 762, 766 (2022).  Whether Lowery was in custody is a question of law reviewed de novo.  *See State v. Miller*, 441 S.C. 106, 119, 893 S.E.2d 306, 313 (2023) (holding the ultimate legal conclusion of whether, based on the facts, a statement was voluntarily made is a question of law subject to de novo review).

A criminal defendant is deprived of due process if his conviction is based, in whole or in part, on an involuntary confession.  *State v. Pittman*, 373 S.C. 527, 565, 647 S.E.2d 144, 164 (2007).  "A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his rights under *Miranda* . . . ."  *State v. Brewer*, 438 S.C. 37, 45, 882 S.E.2d

156, 160 (2022) (quoting *State v. Saltz*, 346 S.C. 114, 135-36, 551 S.E.2d 240, 252 (2001)).

We have not addressed the issue of which party has the burden of proof as to (a) whether the defendant's statement was in response to interrogation and (b) whether the defendant was in custody when he made the statement. However, based on precedent in comparable situations, we hold the State has the burden of proof on these two points. *See State v. Green*, 440 S.C. 292, 304, 890 S.E.2d 761, 768 (2023) (holding that when a defendant objects to the State's attempted use of post-arrest silence for impeachment purposes and the defendant asserts that *Miranda* warnings were given, the burden is on the State to prove by a preponderance of the evidence that the defendant did not receive *Miranda* warnings prior to his silence); *Brewer*, 438 S.C. at 45, 882 S.E.2d at 160 ("Even if a defendant was advised of her *Miranda* rights but nevertheless chose to speak, '[t]he burden is on the State to prove *by a preponderance of the evidence* that h[er] rights were voluntarily waived.'"); *State v. Hart*, 436 S.C. 153, 160, 871 S.E.2d 202, 205 (Ct. App. 2022) ("Part of the State's burden during [a suppression hearing] is to prove that the statement was voluntary and taken in compliance with *Miranda*." (quoting *State v. Creech*, 314 S.C. 76, 84, 441 S.E.2d 635, 639 (Ct. App. 1993))).

## A. Routine traffic stop

"Even if an officer focuses his inquiries on a suspect, *Miranda* warnings are not warranted if the setting is non-custodial." *State v. Barksdale*, 433 S.C. 324, 332, 857 S.E.2d 557, 561 (Ct. App. 2021) (citing *State v. Easler*, 327 S.C. 121, 127-28, 489 S.E.2d 617, 621 (1997), *overruled on other grounds by State v. Greene*, 423 S.C. 263, 283, 814 S.E.2d 496, 507 (2018)). *Miranda* warnings are "not intended to hamper the traditional function of police officers in investigating crime." *Miranda*, 384 U.S. at 477. Routine traffic stops are not "custodial interrogations" for purposes of the *Miranda* rule. *See Easler*, 327 S.C. at 127, 489 S.E.2d at 620; *State v. Peele*, 298 S.C. 63, 65-66, 378 S.E.2d 254, 255-56 (1989); *State v. Morgan*, 282 S.C. 409, 411-12, 319 S.E.2d 335, 336-37 (1984); *Barksdale*, 433 S.C. at 335, 857 S.E.2d at 562.

The trial court found Trooper Vallin's questioning was in furtherance of a routine traffic stop as contemplated in *Morgan*. The court of appeals disagreed and found the encounter with Lowery was not a routine traffic stop, citing *Easler*. *Lowery*, 436 S.C. at 356, 872 S.E.2d at 201. We agree with the court of appeals on this point. As in *Easler*, a scenario in which officers begin looking for an individual

after being told a driver left the scene does not typically constitute a routine traffic stop. Here, law enforcement began to search for a vehicle that was reportedly driven from the scene of a collision. The investigation was no longer a routine traffic stop and was instead a targeted investigation following a search for the driver of a missing vehicle. However, our holding on this point does not fully resolve the question of the admissibility of Lowery's statements.

### B. Lowery's incriminating statements to Trooper Vallin

In the context of custodial interrogation, interrogation is either express questioning or its functional equivalent. *Easler*, 327 S.C. at 127, 489 S.E.2d at 621; *see also Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (explaining that *Miranda* warnings "are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation"). Interrogation includes words or actions on the part of police that police should know are reasonably likely to elicit an incriminating response. *Easler*, 327 S.C. at 127, 489 S.E.2d at 621 (citing *Innis*, 446 U.S. at 301). However, "[v]olunteered inculpatory statements that are not in response to custodial interrogation are admissible without *Miranda* warnings." *State v. Owens*, 293 S.C. 161, 168-69, 359 S.E.2d 275, 279 (1987) (citing *State v. Koon*, 278 S.C. 528, 534, 298 S.E.2d 769, 772 (1982), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 504 n.3, 832 S.E.2d 575, 583 n.3 (2019)); *see also Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment . . . ."); *United States v. Ivey*, 60 F.4th 99, 112 (4th Cir. 2023) ("[S]pontaneous or volunteered statements that are not the product of interrogation or its functional equivalent are not barred by *Miranda*, even if the defendant is in custody when the statements are made." (quoting *United States v. Williams*, 16 F. App'x 90, 92 (4th Cir. 2001) (per curiam))).

During the first thirty-three seconds of the video, Trooper Vallin, without Mirandizing Lowery, questioned Lowery as to where he had been before arriving at the Spinx parking lot and how Lowery was able to drive with a flat tire. These questions were "interrogation," as they were reasonably likely to elicit incriminating responses. Lowery made several incriminating responses to these questions. If Lowery was in custody, these initial incriminating statements to Trooper Vallin were inadmissible; however, we need not decide whether Lowery was in custody, as Lowery later volunteered other equally incriminating statements that he was driving. Lowery made these later statements spontaneously and not in response to anything Trooper Vallin said or did. As noted above, Vallin was speaking with another officer on his shoulder radio when Lowery spontaneously stated, "I don't remember hitting

nobody. I remember just pulling in here to get something to eat. If I hit somebody, I'm sorry. I just wanted to come by here—I called my buddy over here to come get me. I just wanted to get something to eat. If I hit somebody, I'm really sorry." Trooper Vallin ended his radio conversation and briefly acknowledged Lowery's statements by saying "okay" and "I gotcha," but, again, Vallin neither said nor did anything to elicit the statements. Later, when Lowery and Vallin were discussing who Lowery wanted to tow the vehicle, Lowery spontaneously stated, "I guess I screwed up. I can't lie about it." Trooper Vallin neither said nor did anything to elicit this incriminating statement. These admissible volunteered statements created a jury issue as to whether Lowery was driving the vehicle. *See Ivey*, 60 F.4th at 112 (holding the detained defendant's unprompted incriminating statements made when officers were speaking amongst themselves and not to the defendant were admissible because no interrogation was taking place and, therefore, *Miranda* was not implicated).

We additionally hold that any error by the trial court in admitting the incriminating statements made by Lowery during the first thirty-three seconds of Trooper Vallin's video was harmless beyond a reasonable doubt in light of the admissible volunteered statements. *See State v. Byers*, 392 S.C. 438, 448, 710 S.E.2d 55, 60 (2011) ("[T]he materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it could not reasonably have affected the result of the trial." (quoting *State v. Reeves*, 301 S.C. 191, 193-94, 391 S.E.2d 241, 243 (1990))).

### III. Section 56-5-2953

Citing South Carolina Code section 56-5-2953, Lowery argues the trial court should have directed a verdict in his favor because Trooper McNeely's corrupted redacted video, as played for the jury, did not show Lowery being Mirandized and did not include all three field sobriety tests. The court of appeals held the video did not comply with subsection 56-5-2953(A) because it did not show the sobriety tests or *Miranda* warnings; however, citing our holding in *State v. Taylor*, 436 S.C. 28, 870 S.E.2d 168 (2022), the court of appeals held dismissal of the DUI charge was not required. *Lowery*, 436 S.C. at 360-61, 872 S.E.2d at 203.

This Court is free to decide questions of statutory interpretation without deference to the courts below. *Taylor*, 436 S.C. at 34, 870 S.E.2d at 171 (citing *State v. Alexander*, 424 S.C. 270, 274-75, 818 S.E.2d 455, 457 (2018)).

Subsection 56-5-2953(A) requires a DUI suspect's conduct at the incident site to be video recorded. The video recording "must . . . include any field sobriety tests administered . . . and . . . show the person being advised of his Miranda rights." S.C. Code Ann. § 56-5-2953(A)(1)(a)(ii)-(iii) (2018). Subsection (A) further provides the video recordings "are admissible pursuant to the South Carolina Rules of Evidence . . . ." § 56-5-2953(A)(3). Subsection 56-5-2953(B) provides, "[f]ailure by the arresting officer to produce the video recording required by this section is not alone a ground for dismissal of" a DUI charge. § 56-5-2953(B).

Even if Trooper McNeely's corrupted video did not comply with subsection 56-5-2953(A), we agree with the court of appeals that dismissal was not required. First, we held in *Taylor* that "suppression of tainted evidence flowing from the failure to administer *Miranda* warnings in accordance with subsection 56-5-2953(A)—not per se dismissal of the DUI charge—is the proper remedy." 436 S.C. at 39, 870 S.E.2d at 174. Lowery has never argued for the suppression of any statements he made to Trooper McNeely (presumably because he told McNeely he was not driving). Thus, the absence of *Miranda* warnings on the corrupted video did not warrant dismissal of the charge.

Second, the absence of all three sobriety tests on the corrupted video did not warrant dismissal of the charge. In *Taylor*, we noted one of the primary reasons for the video requirements in subsection 56-5-2953(A) is that "seeing the defendant and officer on camera reduces 'swearing contests' in DUI trials . . . ." *Id.* at 35, 870 S.E.2d at 172; *see also State v. Elwell*, 396 S.C. 330, 336, 721 S.E.2d 451, 454 (Ct. App. 2011) ("[T]he primary intention behind section 56-5-2953 was to reduce the number of DUI trials heard as swearing contests by mandating the State videotape important events in the process of collecting DUI evidence."). Evidence of a DUI suspect's failure of field sobriety tests is probative of only one thing—that the suspect was impaired. Here, Lowery conceded that point, as defense counsel told the jury during his opening statement, "You're going to hear a wacky story from a guy who is inebriated. He is drunk. He is drunk as a skunk. And we're not in any way debating that, okay." Also, after the corrupted video was played for the jury and did not show all three tests, Lowery did not object when Trooper McNeely testified he administered the tests and that Lowery showed signs of impairment during all three. Furthermore, Lowery himself elicited testimony during his cross-examination of Trooper McNeely that Lowery was "stumbling around" and slurring his speech and showed "indicators of impairment" during all three tests.

Finally, Lowery argues he was entitled to dismissal because the State failed to "produce" to the jury any video showing Lowery being given *Miranda* warnings. *See* § 56-5-2953(B) ("Failure by the arresting officer to produce the video recording required by this section is not alone a ground for dismissal of any charge . . . if the arresting officer submits a sworn affidavit . . . ."). We disagree. In *State v. Branham*, 392 S.C. 225, 708 S.E.2d 806 (Ct. App. 2011), the defendant was convicted of DUI. The defendant moved to dismiss the charge because the State did not physically produce to him a video of the breath test site. *Id.* at 227, 708 S.E.2d at 807-08. The trial court denied the motion and allowed the breath alcohol test report into evidence. *Id.* at 227, 708 S.E.2d at 808. The report contained a notice that the defendant could view the video on the internet and provided the defendant with an I.D. and password to access the video. *Id.*

The *Branham* court held the word "produce" as used in subsection 56-5-2953(B) means "to bring into existence; to create; to manufacture; or to cause to have existence or to bring forth by mental or physical effort." *Id.* at 232, 708 S.E.2d at 810. The court stated, "[q]uite simply, we find the legislature intended that a video of the breath test site be created." *Id.* We agree with the *Branham* court and hold the word "produce" does not require the video be played for the jury.[2]

The State also argues the court of appeals erred in holding—or suggesting— subsection 56-5-2953(A) <u>requires</u> the portion of the incident site video including field sobriety tests and showing *Miranda* warnings to be played for the jury. We do not read the court of appeals' opinion to suggest such a conclusion, but we address the issue nonetheless. As we observed in *State v. Sawyer*, section 56-5-2953 is a "statute which governs the admissibility of certain evidence." 409 S.C. 475, 481, 763 S.E.2d 183, 186 (2014). Subsection (A) provides a DUI suspect's conduct at the incident site must be recorded, and it requires the video to include the sobriety tests and show *Miranda* warnings being administered. The statute further provides the video is admissible pursuant to the South Carolina Rules of Evidence. However,

---

[2] Of course, if the State seeks to introduce testimony from a witness such as Trooper McNeely regarding the defendant's performance on field sobriety tests or a suspect's statement after *Miranda* warnings, the State runs the risk of the testimony being excluded if it does not offer into evidence the incident site video that includes the tests or warnings. This is in keeping with decisions holding that one of the purposes of the video requirements is to reduce swearing contests in DUI cases.

just because the video is admissible does not mean the State must offer it into evidence.

In *Taylor*, we interpreted the word "show" in subsection 56-5-2953(A) to mean the defendant and the officer must be visually seen and audibly heard on the recording when the officer is advising the defendant of his *Miranda* rights. 436 S.C. at 35, 870 S.E.2d at 172. We did not define "show" to require the video to be shown to the jury. We hold the legislature did not intend to dictate what evidence must be offered by a party during a DUI trial or how the parties must present their cases, but rather intended to ensure the creation of a recording of sobriety tests, the arrest, and *Miranda* warnings. The statute does not require the State to offer into evidence any portion of the video.

## IV.

We reverse the court of appeals in part and affirm in part, and we reinstate Lowery's conviction. Even if Lowery's initial incriminating statements to Trooper Vallin were inadmissible, Lowery's subsequent volunteered incriminating statements were admissible and created a jury issue as to whether he was driving. We affirm the court of appeals' holding that the absence of the sobriety tests and *Miranda* warnings on Trooper McNeely's video did not warrant dismissal. Finally, subject to our warning in footnote two, we hold section 56-5-2953 does not require the State to offer into evidence any portion of the incident site video.

**REVERSED IN PART AND AFFIRMED IN PART.**

**BEATTY, C.J., KITTREDGE, FEW and HILL, JJ., concur.**